MERIDIAN WATERWORKS COMPANY *v.* CITY OF MERIDIAN.

1. MUNICIPALITIES. *Contracts. Water supply. Estoppel. Laws* 1886, *ch.* 325, *p.* 589. *Rescission of contract.*

    Where a city, acting under a statute (Laws 1886, ch. 325, p. 589), empowering it to contract alone for pure and wholesome water, contracted with a water company for a supply of such water, it is not estopped to complain:

    (*a*) That the specific water furnished by the company after its plant had been put in operation was not pure and wholesome, although, pending the negotiations which led to the contract, the city accepted samples of the water which the company proposed to furnish, and the water furnished was like the samples; nor

    (*b*) That the water company used a reservoir from which the city was furnished impure and unwholesome water, although the contract contemplated that the water should be furnished from a reservoir of the kind so used.

2. SAME. *Pure and wholesome water.*

    A contract requiring the party contracted with to furnish "pure and wholesome water" certainly required the water to be furnished to be reasonably pure and wholesome, whether it was required to be perfectly pure or not.

3. SAME. *Fire protection.*

    Where a contract to supply a city with water required the party contracted with to furnish first-class fire protection, the fact that the different sizes of pipe that might be used in constructing the plant were mentioned in the contract did not limit the obligation of the party contracted with to furnish first-class fire protection, nor preclude the city from complaining that the pipes actually laid in pursuance of the contract did not afford first-class protection.

4. SAME. *Extensions of plant.*

    Where a city had instituted proceedings to cancel a contract with a water company, the former's act in allowing or even in ordering additions and improvements to be made after suit was brought did not estop it from prosecuting the proceedings; but the water company, in making improvements with notice of the pendency of the proceedings, acted as a volunteer.

FROM the chancery court of Lauderdale county.

HON. STONE DEAVOURS, Chancellor.

The city of Meridian, the appellee, was the complainant, and the Meridian Waterworks Company, the appellant, the defendant in the court below. From a decree in complainant's favor the defendant appealed to the supreme court. The facts are stated in the opinion of the court.

*A. S. Bozeman, Brown & Spurlock,* and *G. Q.* and *W. M. Hall,* for appellant.

*Miller & Baskin, Ethridge & McBeath,* and *S. A. Witherspoon,* for appellee.

[The briefs in this case on both sides were able, exceedingly elaborate, and full. Their very great length, however, precludes the reporter from making any synopsis which would do them justice.]

BLOUNT,* Special Judge, delivered the opinion of the court.

Bill filed in chancery court of Lauderdale county by the authorities of the city of Meridian asking a decree of forfeiture and a judgment annulling a contract entered into by the mayor and boards of aldermen and city council of said city with the Meridian Waterworks Company, under which contract said company had been operating for about twelve years. The bill alleged continued failures to furnish pure and wholesome water and fire protection, such as called for in the contract. The answer denied the breaches, and set up other defenses referred to hereafter. After prolonged continuances, running for about four years, and after taking a superabundance of testimony, much of which was immaterial, the case was finally tried by the chancellor, and a decree entered cancelling the contract. From this decree the defendant waterworks company prosecutes an appeal.

---

*JUDGE CALHOON having recused himself in this case, I. T. BLOUNT, ESQ., a member of the Supreme Court bar, was appointed and presided in the cause in his place.

By act of the legislature of 1886, p. 589, ch. 325, amending the charter of the city of Meridian, authority was given the city boards "to enter into contract with any person or company for the supply of a sufficient amount of pure and wholesome water to the people of said city." By ordinance adopted July 20, 1886, which ordinance constitutes the contract in this case, "William S. Kuhn, his associates, heirs, legal representatives, and assigns," were authorized, "under the conditions, obligations, covenants, and agreements, subject to the rights of purchase and liability of forfeiture hereinafter provided for, to construct, maintain, own, and operate waterworks in the city of Meridian." This contract, afterwards by an agreement properly entered into and made of record, was transferred to and assumed by appellant, the Meridian Waterworks Company, an incorporation chartered under the state laws. The act of the legislature authorizing this contract expressly required that "a sufficient supply of pure and wholesome water should be furnished the people of Meridian," and that such contract for such water supply "shall be guarded and carefully drawn so as to secure the city in the performance of the same. . . . But no private company shall have the right to lay water mains along the streets of the city without first obtaining the right of way from the city authorities; and the right of way shall be granted only upon condition that such person, company, or corporation shall furnish an abundant supply of pure and wholesome water, and at reasonable rates." Acts 1886, p. 591, ch. 325, sec. 3. The city authorities had no power to contract for anything less than this, and the waterworks company, having undertaken by its contract to furnish the people of Meridian with pure and wholesome water and in sufficient quantities, could not fulfill its obligations without giving the results contemplated by the law and called for in the contract made under this law. The contract was a continuing one, and was to run "twenty-five years," or until annulled "by purchase or forfeiture," and the obligations to carry out this contract were mutual. The conten-

tion is made by appellant that it fully complied with the provisions of the contract as to the quality of the water by procuring within the thirty days allowed by the ordinance samples of the water to be furnished, which was satisfactory to the city boards, and which was accepted by them, and that this is the water which is still being furnished. The contention is also made that the contract contemplated that the water should be furnished through reservoirs (which at the time the contract was made had not been built), just as it was being furnished at the date of the filing of the bill in this case; hence the city is estopped from complaining either against the specific water or the manner in which it is furnished. We cannot accept either proposition as correct. Clearly, the lawmakers contemplated that "pure and wholesome water should be furnished in sufficient quantities," and the city authorities contracted for results, not for the then conditions. Admitting that the specific water, samples of which, on presentation to the city boards, were accepted by them, and declared to be satisfactory, surely this should not be held to preclude a complaint against the company if afterwards this identical water—that is, water from the identical source—was furnished to the people of Meridian in an unwholesome or impure state. The source from which the water originally comes might remain uncontaminated, but the question governing here is, Was the water, when delivered to the consumer, "pure and wholesome?" The city's contract called for "pure and wholesome water in sufficient quantities to supply the people for drinking, domestic, and culinary purposes and for first-class fire protection." As was well said by the learned chancellor in his findings in the court below: "To determine whether water is pure and wholesome and suitable for drinking purposes, it is not necessary to weigh with tenderness and care the testimony of experts; an ordinary mortal knows whether water is fit to drink and use." Nor are we called upon to hold that water, to be wholesome, must be perfectly pure. It must, how-

ever, be reasonably pure and wholesome to comply with a contract of this nature.

The finding of the court below as to the failure to furnish "first-class fire protection" is approved. Again, we say, results, and not particular sized pipes, were the matters in contemplation when the contract was made. The naming in the contract of the different sizes of pipe that might be used in constructing the plant did not in the least diminish or limit the liability of appellant to furnish "first-class fire protection." If it could do this with less than a 12-inch pipe (the largest size contracted for), well and good; but if first-class fire protection could not be given, within the territory covered by the contract, with less than a 12-inch pipe, the waterworks company was under obligation to furnish mains of the largest size called for in the contract, and was in default if it did not do so, if on this account "first-class fire protection" was not given. The city authorities were not required to look after the size of the water pipes. The city could rely on the promise of the waterworks company to perform the stipulations of its contract. *Light, Heat & Water Co.* v. *City of Jackson*, 73 Miss., 598 (19 South. Rep., 771).

We find nothing in the contention that a waiver amounting to an estoppel grows out of the city authorities allowing, or even ordering, additions and improvements to be made after suit was brought. If there had been no agreement concerning this matter, appellant had full notice of the pendency of the proceedings to cancel the contract, and any improvement made thereafter could not be pleaded or taken advantage of to defeat an accrued right, or as an atonement for wrongs committed prior to the institution of the suit then pending. As to the extensions and improvements made after suit was brought, appellant was a volunteer.

The testimony on all the material matters involved in this case was conflicting. The chancellor, as was his province, found the facts in favor of the complainant, and we are not prepared to disagree with him. Reluctant as the courts are to

annul and declare contracts forfeited, we are of the opinion that the case under discussion falls squarely within the rule laid down ·in *Farmers' Loan & Trust Co.* v. *Galesburg,* 133 U. S., 156 (10 Sup. Ct., 316; 33 L. ed., 573), cited with approval by this court in *Light, Heat & Water Co.* v. *City of Jackson,* 73 Miss., 598 (19 South. Rep., 771), and that we should not disturb the finding of the court below.

*Affirmed.*

### SUGGESTION OF ERROR.

After the delivery of the foregoing opinion, *Tim E. Cooper,* for appellant, filed an elaborate suggestion of error, but it was

*Overruled.*