THE STATE OF FLORIDA *ex rel.* W. H. ELLIS, ATTORNEY GENERAL, *Relator,* v. TAMPA WATER WORKS COMPANY, A CORPORATION, *Respondent.*

1. Articles of incorporation obtained under the general law authorizing the corporation to engage in the business of rendering public service in a municipality, do not *ipso facto* authorize the corporation to use privileges and franchises that may be conferred by the municipality to render the public service therein.

2. Municipalities are subordinate governmental entities and can exercise only such powers as are legally conferred by express

provisions of law, or such as are by fair implication and intendment properly incident to or included in the powers expressly conferred for the purpose of carrying out and accomplishing the object of the municipality. Powers that are indispensable to the declared objects and purposes of a municipality may be inferred or implied from powers expressly given that are fairly subject to such construction.

3. The difficulty of making specific enumeration of all such powers as the legislature may intend to delegate to municipal corporations renders it necessary to confer some power in general terms. The general powers given are intended to confer other powers than those specifically enumerated.

4. General powers given to a municipality should be interpreted and construed with reference to the purposes of the incorporation. Where particular powers are expressly conferred and there is also a general grant of power, such general grant by intendment includes all powers that are fairly within the terms of the grant and are essential to the purposes of the municipality, and not in conflict with the particular powers conferred. The law does not expressly grant powers and impliedly grant other powers in conflict therewith.

5. If reasonable doubt exists as to a particular power of a municipality it should be resolved against the city; but when the particular power is clearly conferred or is fairly included in or inferrable from other powers expressly conferred, and is consistent with the purposes of the municipality and the powers expressly conferred, the existence of the power should be resolved in favor of the city so as to enable it to perform its proper functions of government.

6. Authority to make provisions within lawful limitations for securing or furnishing to a city and its inhabitants an abundant supply of good water for all purposes, is a usual and necessary power of a municipality, and such power may be included in powers given in general terms, where there is nothing in the enumeration of particular powers conferred to limit in this particular the operation of the general powers conferred.

7. Unless expressly or impliedly restrained by statute a municipal corporation has a discretion in the choice of means and methods for exercising the powers given it for governmental or public

purposes, and the usual limitations upon the actions of munici-
palities within their legal powers are good faith and reasonable-
ness, not wisdom or perfection.

8. When action is taken by a municipality in the exercise of its
powers the methods used will not be controlled by the courts
where there is no abuse of power or discretion. All doubts as
to the propriety of means used in the exercise of an undoubted
municipal power will be resolved in favor of the municipality.

9. The authority given a municipality in the general law "to make
and sink wells, erect pumps, dig drains," is distinct from and
does not limit or qualify the express particular authority "to pass
all laws necessary to guard against fire" or the charter power
"to provide for the establishment of water works," nor limit
the powers given by the general clauses conferring powers upon
the municipality.

10. The limitations upon the taxing and bonding powers of the
city of Tampa contained in the charter act and the General
Statutes of the State do not preclude the city from granting
privileges in its streets, or from making valid contracts by or-
dinance to carry out a lawful purpose of the municipality in
procuring for the city and its inhabitants an adequate supply of
good water for all purposes.

11. Where a city is authorized to provide for the establishment
of water works and to do and regulate any other matter or
thing that may tend to promote the peace, health, welfare,
prosperity and morals of the city and to do and perform all acts
necessary and best adapted to the improvement and general
interest of the city, the method used by the city in providing
water works for the city is within the lawful discretion of the
city if no particular method is indicated by the law.

12. The powers of the city of Tampa in providing water works
for the city and its inhabitants are not limited to the establish-
ment of a municipal plant, and the city has authority to confer
upon a corporation proper privileges and franchises in the use
of the streets of the city to enable the corporation to furnish
an adequate supply of good water for all purposes to the city
and its inhabitants.

13. An ordinance of a city containing provisions sufficient of
themselves to accomplish an expressed lawful purpose, the fact
that the ordinance also contains separable illegal or improper

provisions will not necessarily render the ordinance void *in toto* when the elimination of the illegal portions will not cause material results not intended, or affect the integrity of the remaining portions for the purposes expressed.

14. Provisions of law applicable to the subject-matter of contracts are parts of the contracts whether so expressed or referred to in the contracts or not.

15. Where the law authorizes the regulation of service rendered the public, such law became a part of and controls contracts providing for the public service.

16. Where a municipal contract for the rendering of public service contains provisions that would be unenforceable because unreasonable, and the law provides for the regulation of the service rendered under the contract, such right to regulate may relieve the apparent unreasonable features of the contract.

17. Municipal contracts for the rendering of public service will be sustained where the power is given to make the contract, and the terms of it taken with the law controlling them are not clearly violative of some provision or principle of law.

18. The powers conferred upon the city of Tampa by its charter and the general law do not authorize the city to grant an exclusive privilege to use the streets of the city for the purpose of furnishing water to the city and its inhabitants.

19. Provisions contained in an ordinance of the city of Tampa relating to rates to be charged and to the capacity of a water works plant authorized in the streets should be construed as having reference to the expressed design to furnish an adequate supply of good water for all purposes, and to the governmental authority to regulate such matters as they affect the rights of the public.

20. As the expressed purpose of the Tampa municipal ordinance contract for the furnishing of water to the city and its inhabitants can be accomplished by its valid portions, and the elimination of invalid or improper portions does not injure the city, it cannot be said that it appears the ordinance would not have been passed without the invalid portions, or that an elimination of the invalid portions would cause results not intended by the ordinance.

This case was decided by the court En Banc.

This is a case of original jurisdiction.

The facts in the case are stated in the opinion of the court.

*E. R. Gunby* and *Glen & Himes,* for relator;

*P. O. Knight* and *Sparkman & Carter,* for respondent.

WHITFIELD, J.—In quo warranto proceedings instituted by the Attorney General against the Tampa Water Works Company, a corporation, it is alleged that the company is exercising, without any warrant or authority of law, the privileges and franchises of using the public streets of the city of Tampa for stated purposes of a system of water works. A writ was issued by this court requiring the Tampa Water Works Company "to show by what warrant or authority it has used, and does use the privileges and franchises aforesaid, to-wit: that of using the public streets of the city of Tampa by maintaining and operating a system of pipes, mains and hydrants therein for the distribution and supply of water to the city of Tampa and the inhabitants thereof for public and private uses, and that of having an exclusive right to furnish water within the city of Tampa to the said city and the inhabitants thereof."

The return of the respondent sets up facts to show its claim of right to use the franchises and privileges alleged, and avers that while under its charter and articles of incorporation it was granted by the State of Florida the exclusive right for twenty years from the date on which it commenced successful operation of its

water works in the streets of Tampa, yet the respondent expressly denies that it has ever exercised, claimed, asserted or usurped any exclusive right to furnish water within the city of Tampa to said city and the inhabitants thereof. The cause is considered upon a demurrer to the return.

The writ is issued against the Tampa Water Works Company as a corporation and it does not directly question the right of the respondent to exist as a corporation entity. The mandate does not call for a showing as to the right to exist as a corporation, but it requires the respondent only to show by what warrant or authority it has used and does use the privilege and franchise in the public streets as alleged. This being so, it is not necessary to consider the questions raised by the relator as to the constitutionality of the general incorporation acts of 1868, Chapter 1639, Laws of Florida, under which the respondent claims to have obtained its charter to exist and do business as a corporation.

Articles of incorporation obtained under the general law authorizing the corporation to engage in the business of rendering public service in a municipality, do not *ipso facto* authorize the corporation to use privileges and franchises that may be conferred by the municipality to render the public service therein.

As the right to exist as a corporation and to do the kind of business alleged are not questioned, the existence of proper authority from the city of Tampa to the corporation to exercise the privilege and franchise of using the streets as alleged is to be determined. The question is the existence of authority, not the proper exercise of it.

Municipalities are established by law for purposes of government. Their functions are performed through appropriate officers and agents, and they can exercise

only such powers as are legally conferred by express provisions of law, or such as are by fair implication and intendment properly incident to or included in the powers expressly conferred for the purpose of carrying out and accomplishing the object of the municipality. Powers that are indispensable to the declared objects and purposes of a municipality may be inferred or implied from powers expressly given that are fairly subject to such construction. The difficulty of making specific enumeration of all such powers as the legislature may intend to delegate to municipal corporations renders it necessary to confer some power in general terms. The general powers given are intended to confer other powers than those specifically enumerated. General powers given to a municipality should be interpreted and construed with reference to the purposes of the incorporation. Where particular powers are expressly conferred and there is also a general grant of power, such general grant by intendment includes all powers that are fairly within the terms of the grant and are essential to the purposes of the municipality, and not in conflict with the particular powers expressly conferred. The law does not expressly grant powers and impliedly grant others in conflict therewith. If reasonable doubt exists as to a particular power of a municipality it should be resolved against the city; but where the particular power is clearly conferred or is fairly included in or inferable from other powers expressly conferred, and is consistent with the purposes of the municipality and the powers expressly conferred, the existence of the power should be resolved in favor of the city so as to enable it to perform its proper functions of government.

Among the usual functions of a municipal government are those of granting privileges in the use of its streets for the purpose of rendering services of a public

nature, such as furnishing the municipality and its in-habitants service necessary or useful for the common welfare of all. The furnishing of water for use and for fire protection is a service necessary or useful for the individual and collective well-being of a city and its inhabitants. Authority to make provisions within lawful limitations for securing or furnishing to a city and its inhabitants an abundant supply of good water for all purposes, is a usual and necessary power of a municipality, and such power may be included in powers given in general terms, where there is nothing in the enumeration of particular powers conferred to limit in this particular the operation of the general powers conferred. Porter v. Vinzant, 49 Fla. 213, 38 South. Rep. 607; Mernaugh v. City of Orlando, 41 Fla. 433, 27 South. Rep. 34.

Unless expressly or impliedly restrained by statute a municipal corporation has a discretion in the choice of means and methods for exercising the powers given to it for governmental or public purposes, and the usual limitations upon the actions of municipalities within their legal powers are good faith and reasonableness, not wisdom or perfection. Jacksonville Electric Co. v. City of Jacksonville, 36 Fla. 229, text 271, 18 South. Rep. 677.

Where action is taken by a municipality in the exercise of its powers the methods used will not be controlled by the courts where there is no abuse of power or discretion. All doubts as to the propriety of means used in the exercise of an undoubted municipal power will be resolved in favor of the municipality.

In its return the respondent exhibits an ordinance contract approved September 29, 1887, between the city of Tampa and the Tampa Water Works Company containing provisions "that in view of the urgent necessity

for the better protection against fire, and also to obtain for the use of the inhabitants of said city an abundant supply of good water for all purposes," "the exclusive right and privileges to construct, maintan and operate water works for public and private supply of water within said city for a term of thirty years is hereby granted * * * together with the right to lay pipes, erect hydrants, fountains and such other structures and appurtenances in any and all the streets or other public ways in the said city, as may be required for the distribution of water;" that in consideration of $4950.00 per annum the company agreed to erect water works with a reservoir capable of holding 100,000 gallons of water of sufficient height to give a stated pressure at a given point in the city; to supply with water for fire purposes mains, &c., as designated; to supply with water, for the payment of city taxes and license for the first ten years of the contract, the City Hall, Guard House and Market House, with designated accommodations at such places on the mains as designated by the City Council; that a sufficient tax shall be levied and collected annually upon all taxable property of the city to meet the payments due under the contract as they respectively mature; that the main or pipe system shall be laid in such streets as shall give the greatest amount of fire protection and the distribution of an adequate amount of water to the consumers; that the company shall, in accordance with the contract set out in the ordinance, extend the water mains to any part of the said city, when ordered to do so by the proper authorities of the city of Tampa; that there shall be annually levied and collected a tax of five mills of the property in the city for the payment of the obligations of the contract. Other provisions of the ordinance contract need not be stated here.

Chapter 3779, which became effective June 2, 1887,

and established the city of Tampa, provides in section 7, that the "city council shall have power to make, ordain, establish and execute for the government of said city such ordinances * * * as they shall deem necessary * * * to provide for the establishment of water works * * * and to do and regulate any other matter or thing that may tend to promote the peace, health, welfare, prosperity and morals of the said city; and * * * said city council shall have all the powers and perform all the duties imposed upon them by the laws of Florida * * * providing for the creation and government of cities and towns."

Under the general laws of the State the city council had the power "to levy and collect a special tax annually for water works and fire protection," Chapter 3605, Acts 1885; "to pass all laws and ordinances which may be necessary for the preservation of the public health;" "to make and sink wells, erect pumps, dig drains; to pass all necessary laws to guard against fire, * * * and to do and perform all such other act or acts as shall seem necessary and best adapted to the improvement and general interest of the city." Sections 20 and 21, page 249 McClellan's Digest of 1881.

It is contended that these provisions of law did not authorize the city of Tampa to make the contract with the respondent. The argument is that the furnishing of water by a municipal plant was contemplated because the general law authorized the city council "to make and sink wells, erect pumps, dig drains;" to issue bonds for building or repairing the public works of the city; to levy a special tax for water works and fire protection; and because the city charter empowered the city council by ordinance "to provide for the establishment of water works," and to impose fines and penalties for breaches of ordinances; and because limitations were placed upon

the power to borrow money and issue bonds, and to make appropriations, and enabling legislation was enacted, and because of the provisions as to the related powers given by the charter and by the general law, and the limitations contained in section 8 of Article 8 of the constitution.

The authority contained in the general law "to make and sink wells, erect pumps, dig drains," is distinct from and does limit or qualify the express particular authority "to pass all laws necessary to guard against fire" or the charter power "to provide for the establishment of water works." Nor does the express specific authority as to wells, pumps and drains limit the powers given under the general welfare clauses. No such purpose can be discovered in a careful consideration of all the provisions of law on the subject of the municipal powers. Any provision made by the city must be by ordinance, and cities are authorized to contract by ordinance as well as to erect their own plants by ordinance and to perform other duties by ordinance.

The limitations upon the taxing powers of the city contained in the charter act or in the General Statutes of the State do not preclude the city from granting privileges in its streets or from making valid contracts by ordinance to carry out any lawful purpose of the municipality.

The powers given as to taxation and appropriations are as applicable to the obligations of lawful contracts as to municipal plants. Powers and limitations as to bonds for public works of the city do not forbid the making of valid contracts for lawful purposes. The method by which water works are to be provided is not indicated in the law and the city may exercise a lawful discretion in using the charter powers "to provide for the establishment of water works * * * and to do and

regulate any other matter or thing that may tend to promote the peace, health, welfare, prosperity and morals of the said city," and the powers given by the general law to do and perform all acts necessary and best adapted to the improvement and general interest of the city.

The powers given the city council are not expressly or by fair implication limited to the establishment of a municipal plant for the purpose of conserving the public health, safety and general welfare by providing for the city and its inhabitants. It was clearly within the power of the city under the provisions of law herein referred to, to make a valid contract with a private corporation "to obtain for the use of the inhabitants of said city an abundant supply of good water for all purposes," and to confer upon the corporation proper privileges and franchises in the use of the streets of the city to enable the company to properly render the public service provided for.

Under the express authority given the city council of the city of Tampa by the charter act "to provide for the establishing of water works," and to "have all the powers and perform all the duties imposed upon them by the laws of Florida * * * providing for the creation and government of cities," taken in connection with the powers given by the general law on the subject "to levy and collect a special tax annually for water works and fire protection;" "to pass all laws and ordinances which may be necessary for the preservation of the public health;" "to make and sink wells, erect pumps, dig drains; to pass all necessary laws to guard against fire" * * * "and to do and perform all such other act or acts as shall seem necessary and best adapted to the improvement and general interest of the city," and construed with reference to the principle that while municipalities

870    SUPREME COURT OF FLORIDA,

State *ex rel.* Ellis v. Tampa Water Works Co.—Opinion of Court.

can exercise only such powers as are given expressly or by necessary or fair implication from those expressly given, yet such municipalities are given all the powers that are incident to and by implication are fairly included in powers expressly given and that are necessary to the purposes of their creation, it is clear that the usual and essential authority to make provision for an adequate supply of good water for the use of the city and its inhabitants is included in the powers conferred upon and the duties imposed upon the city of Tampa when the contract was made. It is also clear that the city had the choice of means for securing such supply of water, since nothing in the charter act or general law can be fairly held to limit the bona fide discretion necessarily vested in the city for the public welfare.

It is contended that even if the city had the power to make the contract with the respondent the particular contract is void because it undertakes to confer an exclusive privilege to fix rates, to limit the capacity of the plant, to exempt the property from taxation for ten years, to provide an unlawful levy of taxes and appropriation of funds, to divide municipal fines, to guarantee interest on respondent's bonds and to regulate subscriptions to the stocks and bonds of the respondent.

Where a municipality in the exercise of an undoubted power confers by ordinance privileges and franchises for a proper purpose clearly expressed in the ordinance, which contains provisions sufficient of themselves to accomplish the expressed purpose, the fact that the ordinance contains separable illegal or improper provisions will not necessarily render the ordinance void *in toto* when the elimination of the illegal portions will not cause material results not intended, or affect the integrity of the remaining portions for the purposes designated by the ordinance.

Provisions of law applicable to the subject-matter of contracts are parts of the contracts whether so expressed or referred to in the contracts or not.

Where the law authorizes the regulation of service rendered the public, such law becomes a part of and controls the contracts providing for the public service. State *ex rel.* Attorney General v. Atlantic Coast Line Ry. Co., 52 Fla. 646, 41 South. Rep. 705.

Where a municipal contract for the rendering of public service contains provisions that would be unenforceable because unreasonable, and the law provides for the regulation of the service rendered under the contract, such right to regulate may relieve the apparent unreasonable features of the contract.

Municipal contracts for the rendering of public service will be sustained where the power is given to make the contract and the terms of the contract taken with the law controlling them are not clearly violative of some provision or principle of law.

The powers conferred upon the city of Tampa by its charter and by general law do not give to the city authority to grant an exclusive privilege to use the streets of the city for the purpose of furnishing water to the city and its inhabitants (Florida Cent. & P. R. Co. v. Ocala St. & S. R. Co., 39 Fla. 306, 22 South. Rep. 692; Capital City Light & Fuel Co. v. City of Tallahassee, 42 Fla. 462, 28 South. Rep. 810), but the respondent expressly disclaims any such exclusive right.

The provision contained in the contract as to rates to be charged for the water is not void under the law, but it is subject to and is controlled by the right of the legislature to provide for regulating the rates under the provisions of section 30, Article 16 of the constitution. City of Tampa v. Tampa Water Works Co., 45 Fla. 600, 34 South. Rep. 631.

872    SUPREME COURT OF FLORIDA,

State *ex rel.* Ellis v. Tampa Water Works Co.—Opinion of Court.

The provision for reservoirs, pipes, mains, &c., of specified dimensions clearly has reference to the necessities of the city when the contract was made, and such provision is to be taken in connection with other provisions, and with the declared purpose of the contract "to obtain for the use of the inhabitants of said city an abundant supply of good water for all purposes." The provisions that the respondent should furnish "a first class fire protection" and that "as the city grows and * * * should desire new hydrants, the party of the second part should erect them, and the city shall pay for them" and to "extend the water mains to any part of the said city, when ordered to do so;" "that the main or pipe system shall be laid in such streets as shall give the greatest amount of fire protection and the distribution of an adequate amount of water to the consumers" and other provisions of the ordinance contract must be considered as having reference to the necessities of the future as to increased capacity, and to the governmental authority to regulate and control such matters as they affect the rights of the public. See section 8 of Article 8 and section 30 of Article 16 of the constitution, and section 30, page 234 McClellan's Digest. See also Meridian Water Works Co. v. Meridian, 85 Miss. 515, 37 South. Rep. 927.

The time covered by the exemption from taxation has long since passed.

The ordinance provides that "there shall be annually levied and collected on all real estate and personal property within the corporate limits of the city of Tampa a tax of five mills, which shall be applied to the payment of the obligations incurred herein and for no other purpose." This is not an appropriation of the total amount of the contract obligation, nor is it a levy of taxes for each and every year during the continuance of the con-

tract; but it is an undertaking on the part of the city as stated in the contract that it will *annually* levy a tax sufficient to meet the contract obligations. Of course the amount of the annual levy is limited to the sum required to meet the contract obligation within the maximum of five mills, and it is admitted that only the necessary levy is made, being much less than the maximum. And the ordinance contract contemplates an annual levy to be made in a lawful manner and for a proper amount.

The provision as to division of fines imposed by the city can not be enforced, but it does not destroy the contract.

The provision of the ordinance for guaranteeing the interest on the bonds of the respondent as such may be void, but it does not destroy the entire contract. The amount guaranteed is stated in the ordinance to be the same amount the city agreed to pay for the water furnished, and its payment by the city would by the terms of the ordinance discharge the obligation of the city to pay the amount for water.

The provision as to stock subscriptions contained in the ordinance may be disregarded here.

The ordinance contract provides for service covering a period of thirty years, and some of the provisions of the contract as made would perhaps be considered an unreasonable restriction of the necessities and rights of the public in a growing city with reference to the future, but as the provisions are subject to the right of the legislature to regulate the rendering of the public service to the end that an adequate service be secured for only a reasonable compensation, the supposed unreasonableness of the provisions of the ordinance as to matters affecting the public service need not be so critically examined. As new conditions arise the law which is a

part of the contract will so operate upon the contract and the service rendered under it as that the public may be fully protected in their rights. The circumstances here do not render this contract unreasonable. Flynn v. Little Falls Electric & Water Co., 74 Minn. 180. 78 N. W. Rep. 106.

The ordinance contract contains provisions as to taxation, exclusive privileges, division of fines, exemption from taxation and other matters that are for the benefit of the respondent, but such benefits are either disclaimed or waived or not insisted on, or the time for performance has long since passed; and such provisions do not collectively or severally so affect the contract or the franchise conferred as to make the contract void or the franchise unauthorized, even if the provisions as to the other matters are illegal or unenforceable, since the improper provisions may be eliminated or disregarded and the remaining features of the ordinance contract are capable of standing and being enforced by themselves to accomplish the expressed purpose of the contract, *viz*: the securing of an adequate supply of good water for all purposes.

If the express purpose of the contract can be accomplished by its valid portions and the elimination of the invalid portions does not injure the city it cannot be said that it appears the ordinance would not have been passed without the invalid portions, or that the elimination of the invalid portions would cause results not intended by the ordinance. The expressed purpose of the ordinance contract is to secure an adequate water supply for all purposes, and this can be accomplished without any of the illegal portions of the ordinance. The elimination of the invalid portions relieves the city and the respondent asks no benefit from them.

In view of the expressed provisions and purpose of

the contract and the right of the State to regulate the service, the apparent inadequate provisions to meet the demands of a growing city are not in reality necessarily inadequate and do not render the contract void *in toto.*

The contract was made for future service of a public nature and it should be regarded as designed to meet the demands of the future and its provisions fairly so construed. Such appears to have been the course pursued by the city and the respondent.

In view of the laws of the State for regulating the rendering of the public service and the expressed purpose of the contract it can not be said that the contract is illegal and void or that the provisions thereof are unreasonable and not enforceable within the limits placed thereon by the laws which became and remain a part of the contract.

As the city of Tampa had the power to grant the privileges or franchises and to make the contract under which the privileges and franchises are being exercised, and the contract is valid for the purposes of granting the privileges and franchises, questions of estoppel and ratification on the part of the city and other matters argued need not be considered.

The demurrer to the return is overruled with leave to plead within fifteen days.

All concur, except SHACKLEFORD, C. J., disqualified.