GIFT et al. v. LOVE, SUPERINTENDENT OF BANKS.

(Division B. Nov. 21, 1932.)

[144 So. 562. No. 30169.]

444

W. C. Sweat, of Corinth, for appellant.

452

E. C. Sharp, Creekmore & Creekmore, and Flowers, Brown & Hester, all of Jackson, for appellee.

458

**Anderson, J.**, delivered the opinion of the court (after stating the case as above).

Section 3815, Code of 1930, provides as follows: "The stockholders of every bank shall be individually liable, actually and ratably, and not for one another, for the benefit of the depositors in said bank to the amount of their stock at the par value thereof, in addition to said stock; but persons holding stock as executors, administrators, guardians, or trustees shall not be personally liable as stockholders, but the assets and funds in their hands constituting the trust shall be liable to the same extent as the testator, intestate, ward or person interested in such trust fund would be, if living or competent to act; and persons holding stock as collateral security shall not be personally liable as stockholders, but the person pledging such stock shall be deemed the stockholder and liable under this section. Such liability may be enforced in a suit at law or in equity by any such bank in process of liquidation, or by the superintendent of banks, or other officer succeeding to the legal rights of said bank."

Section 3803, Code of 1930, is in this language: "A book shall be provided and kept by every bank, in which

shall be entered the names and residences of the stockholders thereof, the number of shares held by each, the time when such person became a stockholder, and also all transfers of stock, stating the time when made, the number of shares and by whom transferred. In all actions, suits and proceedings, such book shall be prima facie evidence of the facts therein stated. The liability of any stockholder in a bank upon transferring his stock in such bank to another shall not cease until the next regular or special examination of said bank following the date of transfer of said stock and not then unless such examination shows the bank to be solvent; but the purchaser's liability shall begin after the next ensuing examination showing the bank to be solvent.''

Section 3802 of the Code of 1930, provides, among other things, that a bank may buy its own stock when taken in payment of a debt due it provided the debt is paid in full.

Appellants contend that the word ''another'' in section 3803 does not include the bank in which the stock is held, but refers to some other corporation, person, or partnership than such bank. If appellant's contention be sound, a stockholder in a bank may pay his debt to the bank with his stock and escape double liability thereon, although the bank closes for liquidation after such transfer and before any regular or special examination by the banking department. We think that is too narrow a construction of the statute, notwithstanding the statute imposing double liability is to be strictly construed, as held in Mellott v. Love, 152 Miss. 860, 119 So. 913, 64 A. L. R. 968. In construing a statute its intent and purpose must not be left out of sight. If appellants' construction of the statute be correct, a condition could be imagined which would result in the purpose of the statute being entirely defeated. For illustration, take a bank with fifty thousand dollars capital stock divided

equally between ten stockholders; each stockholder is indebted to the bank in an amount equal to or more than the value of his stock; by agreement with the bank all the stockholders transfer their stock to the bank in payment in full of their indebtedness; after this is done and before the bank has been examined by the banking department, it closes for liquidation; it is largely insolvent, unless the stockholders are still subject to double liability on their stock. In such case the managing officers of the bank and the stockholders could get together in anticipation of the bank's failure and defeat the rights of the creditors and depositors of the bank. We do not think the statute bears such a construction.

Appellants contend that appellee, being a party to the settlement which took place during the progress of the administration of the Gift estate between that estate and the bank and the Gift heirs, is bound by it; that he is now thereby estopped to attack and attempt to set it aside; that by releasing their judgment against the trustee of the Gift estate, part of which was the bank stock, and taking from him and the bank a quitclaim deed to the property here involved, the Gift heirs became bona fide purchasers of the property, and by reason thereof the property is not subject to the stock liability claim of the bank against the Gift estate.

There was no authority in appellee as superintendent of banks to approve that compromise settlement. The superintendent of banks is a public officer—a state officer. The state cannot be estopped by the unauthorized acts of its officers. Eastman Oil Mills v. State ex rel. Roberson, 130 Miss. 63, 93 So. 484; Meridian Waterworks Co. v. Meridian, 85 Miss. 515, 37 So. 927; Edwards Hotel & City St. R. R. Co. v. Jackson, 96 Miss. 547, 51 So. 802.

In considering the effect to be given the compromise settlement between the trustee of the Gift estate and the bank and the Gift heirs the nature and character of the

double liability of stockholders in banks should be understood and kept in mind. The National Bank Act, which in all substantial respects appears to be identical with our statute on the subject, was construed by the Supreme Court in Richmond v. Irons, 121 U. S. 27, 7 S. Ct. 788, 30 L. Ed. 864. The court held in that case that the individual liability of a stockholder in a national bank was an essential element in the contract by which the stockholder became a member of the corporation; that the contract was voluntarily entered into by subscribing for and accepting the shares of stock; that the statute imposing double liability became a part of the contract between the bank and the stockholder; and that the double liability of the stockholder survived as against his estate. Matteson v. Dent, 176 U. S. 521, 20 S. Ct. 419, 420, 44 L. Ed. 571, was a case of this character. Matteson became the owner of ten shares of the capital stock of a national bank, which were duly registered on the books of the bank in his name. He died intestate while the stock still so stood, leaving surviving him his widow and six children. A final account of the administration of his estate had been filed by the administrator, and a decree entered therein turning over the estate, including the ten shares of stock in the bank, to his heirs. Under this decree his heirs acquired title to the ten shares of stock. Afterwards the bank became insolvent and was closed by the comptroller of the currency, and a receiver was appointed to wind up its affairs. The comptroller made an assessment upon the shares of stock held by Matteson of one hundred dollars per share, and instituted a proceeding to enforce such liability against his heirs. The court used this language in deciding the case: "Leaving out of view for the moment the legal effect of the allotment of the ten shares of stock to the next of kin of Matteson, let us consider what, if any, liability rested upon his estate to pay the assess-

ment on the ten shares of stock which stood at his death in his name, and so remained up to the time of the allotment. Because the insolvency of the bank took place after the death of Matteson, did it result that the assessment, which was predicated upon the insolvency, was not a debt of his estate? To so decide the statute must be construed as imposing the liability on the shareholder for the amount of his subscription when necessary to pay debts, only in case insolvency arises during the lifetime of the shareholder. In other words, that all liability of shareholders to contribute to pay debts ceases by death. This construction, however, would be manifestly unsound. The obligation of a subscriber to stock to contribute to the amount of his subscription for the purpose of the payment of debts is contractual, and arises from the subscription to the stock. True, whether there is to be a call for the performance of this obligation depends on whether it becomes necessary to do so in consequence of the happening of insolvency. But the obligation to respond is engendered by and relates to the contract from which it arises. This contract obligation, existing during life, is not extinguished by death, but like other contract obligations survives and is enforceable against the estate of the stockholder.''

To the same effect are Davis v. Weed, 44 Conn. 569, Fed. Cas. No. 3,658; Bailey v. Hollister, 26 N. Y. 112.

It is true that when Gift died his stock double liability had not matured; it was inchoate until the bank became insolvent, nevertheless it originated during his lifetime. It was rooted into and was a part of his contract of subscription to the stock. When the bank became insolvent and closed, the liability became fixed and ascertainable and was just as much a debt of his estate as any other debt he owed, originating during his lifetime.

Appellants refer to Williams v. Cobb, 242 U. S. 307, 37 S. Ct. 115, 61 L. Ed. 325. The court held in that case

that a transfer of a decedent's national bank stock by his executors to themselves as trustees, in the bona fide discharge of their duty under the will to invest a specified sum in interest-bearing securities and pay the income thereof to a designated person, was not void but only voidable, and that, so long as the transfer was permitted to stand without a direct attack, the title should be deemed to have passed, so as to relieve both the estate and the legatee, made liable by statute, after distribution, for debts of the estate from any liability for a subsequent assessment upon the stock for the benefit of the creditors.

We do not understand that case to be in point. Stress seems to be laid on the fact that the proceeding there was not a direct attack on the transfer of the stock by the executors to themselves as trustees. The bill in the case at bar is necessarily a direct attack on the compromise settlement made between the bank, the trustee of the Gift estate, and the Gift heirs.

It follows from what we have already stated that when the bank closed for liquidation Gift's estate became indebted to it in a sum equal to the par value of the stock he held in the bank. This indebtednes did not arise after his death. It is true it matured after his death, but it originated before his death and stood in the same class as any of his other unsecured debts and became a charge upon his entire estate, both real and personal. The real estate went to his heirs, and his personal estate, with the exception of five thousand dollars, went elsewhere, but all of it, both realty and personalty, remained subject to his debts, including the double liability on his bank stock.

Section 1643, Code of 1930, provides as follows: "The goods, chattels, personal estate. choses in action, and money of the deceased, or which may have accrued to his estate after his death from the sale of property, real

or personal, or otherwise, and the rent of lands accruing during the year of his death, whether he died testate or intestate, shall be assets, and shall stand chargeable with all the just debts and funeral expenses of the deceased, and the expenses of settling the estate; and the lands of the testator or intestate shall also stand chargeable for the debts and such expenses over and above what the personal estate may be sufficient to pay, and may be subjected thereto in the manner hereinafter directed.''

Under our statute the lands, as well as the personalty, of the deceased are liable to the payment of his debts. The only difference is that the latter is to be first exhausted. It is true the legal title to lands descends to the heirs, who are entitled to enjoy them until the contingency arises when they may be required to pay debts but the heir holds them subject to the charge of the ancestor's debts. The charge is fixed by law at the time of the ancestor's death, though the indebtedness may not be then ascertained. In the interim the heirs hold the legal title subject to this charge. Evans v. Fisher, 40 Miss. 643; Lee v. Gardiner, 26 Miss. 541, 542; Stigler v. Porter, 42 Miss. 449.

The twenty-five thousand dollar judgment of the Gift heirs against the trustee of his estate was not in the same class as the indebtedness of Gift's estate to the bank growing out of his stock double liability. In fact, it was no indebtedness whatever of the Gift estate to his heirs, instead it represented their claim to a part of his estate by inheritance. Gift owed his heirs nothing when he died. The fact that the trustee in Gift's will had converted lands into money, which lands his heirs were entitled to by inheritance, did not put them in the same class with the debt due by the estate to the bank growing out of his subscription to the stock of the bank. Their claim was based on their heirship, not on any obligation Gift had undertaken before his death. Therefore

when the bank went into liquidation the matter stood thus: Gift's assets consisted of four hundred thirty-three shares of stock in the Corinth Bank & Trust Company of the par value of forty-three thousand, three hundred dollars; his stock in the Martin Grocery Company of the par value worth ten thousand dollars; and perhaps other personal property and choses in action, and, in addition, lands, including his home, the land here in controversy. In addition to the forty odd thousand dollars he owed the bank for borrowed money, he owed it, under the statute, forty-three thousand, three hundred dollars, the par value of his stock, or so much thereof as was necessary to liquidate the bank in the manner provided by law. He owed his heirs and legatees nothing. His heirs took the real estate by inheritance subject to his indebtedness to the bank, including the double liability on his stock in the bank; and that is also true of those to whom the personal property went under the provisions of the will.

Under the law no compromise settlement could be made, before the bank went into liquidation between the bank and Gift heirs and the trustee under Gift's will, which would result in the defeat of the bank's right to enforce its double liability claim. The managing officers of the bank, while it was a going concern, were trustees for the creditors and depositors of the bank. There was no consideration passing to the bank for its quitclaim deed to the Gift heirs to the homestead, the property involved. The bank received nothing in return for the deed. The transfer by Gift's trustee and his heirs of his stock in the bank to pay his indebtedness due it for loaned money was no consideration for the quitclaim deed. His stock was already subject, with all the balance of his estate, to the payment of that indebtedness to the bank, and to the exclusion of the judgment held by the heirs for the proceeds of real estate theretofore sold by the trustee. In other words, that which the bank

got by virtue of the compromise settlement, as well as that to which it gave the Gift heirs a quitclaim deed (the property here involved), was subject to the entire indebtedness due the bank by the Gift estate, including the stock double liability claim. The bank got nothing by the compromise and surrendered nothing.

The case of Vick v. La Rochelle, 57 Miss. 602, has more or less bearing on this question. The statute in force when that case was decided provided that each stockholder should be individually liable for the debts of the corporation contracted during his ownership of stock, for the amount or the balance remaining due and unpaid for the stock subscribed for by him, and might be sued by any creditor of the corporation therefor, and that such liability should continue for one year after the sale or transfer of his stock. That was a suit of a creditor of a corporation against a stockholder. Before the suit was brought the corporation had released the stockholder from his subscription upon his payment for part of the stock and his surrender of the remainder to the corporation. In deciding the case the court used the following language in part: "The subscriptions for stock constitute the means of the company, on the faith of which credit is given, and each subscriber for stock is liable for all debts contracted during his ownership of stock, and for one year after he has transferred it to another to the amount of his subscription not paid according to its terms. Al release by the corporation, without payment of the amount of the subscription does not affect the right of the creditor to hold the stockholder to his statutory liability. A failure of the corporation to call for payment of stock subscriptions, or any concession by it to the stockholder who has not paid his subscription, does not affect the right of the creditor to collect his debt from the stockholder to the extent of the amount of his subscription for stock which remains

unpaid. Actually unpaid, whatever may have occurred between the subscriber and the corporation, is what the statute means.''

Affirmed.