RATHER *et al. v.* MOORE.

(Division A. April 19, 1937.)

[173 So. 664. No. 32644.]

J. M. Stevens, Jr., J. Morgan Stevens, and W. E. Gore, all of Jackson, M. S. McNeil and John Armstrong, both of Hazlehurst, and T. N. Gore and W. A. Cox, both of Marks, for appellants.

**P. H. Lowrey,** of Marks, for appellants.

82

L. A. Smith, Sr., of Holly Springs, for appellants.

Lester **G. Fant, Sr.,** and **Jr.,** of Holly Springs, for appellants.

**W. S. Henley**, of Hazlehurst, for appellee.

Partee L. Denton, of Marks, for appellee.

92

**E. C. Black,** of Marks, for appellee.

F. W. Bradshaw, Flowers, Brown & Hester, and Robert Burns, all of Jackson, for appellee.

**McGowen, J.**, delivered the opinion of the court.

Appellee, Moore, as receiver of the Riverside Bank of Marks, filed his bill against L. A. Rather and many others in the chancery court of Quitman county on March 11, 1935, seeking to recover from them, as stockholders, for their double liability, which was necessary to pay the depositors.

All the appellants, who were respondents in the court below, filed a special demurrer setting up the three-year statute of limitation, which the court below overruled, but granted an appeal to the Supreme Court to settle all the controlling principles of the case.

Finley and L. A. and H. H. Rather, executors, also filed a plea to the effect that the bill sought to recover double liability from them as stockholders, and joined with them certain stockholders who were residents of Quitman county, Miss., but that Finley and the Rathers were residents of Marshall county, Miss.; that the bill in one aspect sought an accounting between the stockholders, and a discovery from all the defendants named in the bill as to their ownership of stock in the insolvent bank. The plea further set forth that the bill, on its face, showed that all the stockholders had not been made parties defendant to the bill, and that those named in the bill as not having been sued were necessary and proper parties, and that the suit should be abated until all stockholders not sued were brought into court. Finley and the Rathers also filed a special demurrer to the bill which set up that the double liability law had been repealed by section 119, chapter 146, Laws 1934.

The bill alleged that the Riverside Bank became hopelessly insolvent in the year 1930; that on January 7, 1931, the directors of said bank met and by resolution

requested the State Banking Department to take charge of said bank as an insolvent institution, and to put it in course of liquidation, which was done by order of the chancery court on the 17th day of January, 1931. The bill further alleged that the appellant stockholders owned shares of stock in the bank at the time it closed its doors and prior thereto in various amounts, as shown by the stock book of the insolvent bank; that demand had been made on them for the payment of the liability which was imposed by section 59 of chapter 124, Laws of 1914. The bill further alleged that certain stockholders had either discharged their double liability by payment or had arranged to pay it, or were insolvent. The bill also charged that on January 17th the insolvent bank went into liquidation and was placed in charge of J. S. Love, superintendent of banks, who was succeeded by various liquidating agents, and finally by a receiver appointed pursuant to chapter 146, Laws of 1934. The bill contained this allegation: ''Complainant further shows that it has been clear since the 1st of May, 1934, that the losses would be far in excess of the full amount of the capital stock of said bank, which was $50,000.00 and that it would be necessary to call upon the stockholders for their double liability under the statute.''

It will be noted that the bill in this case, seeking recovery for double liability, was filed against the stockholders more than three years and less than six years from the date the cause of action accrued. The double liability of stockholders in insolvent banks was first imposed by the Legislature in the Laws of 1914—chapter 124, section 59—was continued in force by chapter 207, Laws of 1916, and again in section 3815, Code of 1930.

1. The battle was waged in the court below by the appellants and the appellee chiefly upon whether the three-year or the six-year statute of limitation applied. The two statutes involved are as follows:

''2299. *Actions to be brought in three years.*—Actions

on an open account or stated account not acknowledged in writing, signed by the debtor, and on any unwritten contract, express or implied, shall be commenced within three years next after the cause of such action accrued, and not after.''

''2292. *Actions to be brought in six years.*—All actions for which no other period of limitation is prescribed shall be commenced within six years next after the cause of such action accrued, and not after.''

As stated in the bill, the bank was hopelessly insolvent before it closed its doors, the directors of the bank represented to the chancery court that it was insolvent, and the court took over the liquidation of said bank by order on its minutes on January 17, 1931. When the chancery court took over the insolvent bank for liquidation a potential inchoate liability was transformed into an enforceable one. Pate v. Bank of Newton, 116 Miss. 666, 77 So. 601; Board of Bank Examiners v. Grenada Bank, 135 Miss. 242, 99 So. 903; Gift v. Love, 164 Miss. 442, 144 So. 562, 567, 86 A. L. R. 63; Gray v. Love, 173 Miss. 390, 161 So. 679. It was unnecessary for the superintendent of banks to declare this bank insolvent, or state that it was necessary to enforce the liability. Anderson v. Love, 169 Miss. 219, 151 So. 366, 153 So. 369.

It is insisted by appellants that the liability imposed on stockholders of a state bank, and their obligation to pay, constitutes an implied contract, and they cite in support thereof, Mellott v. Love, 152 Miss. 860, 119 So. 913, 64 A. L. R. 968; Gift v. Love, supra; Carothers v. Love, 169 Miss. 250, 152 So. 483, 153 So. 389. In the Gift Case the court said: ''It is true that when Gift died his stock double liability had not matured; it was inchoate until the bank became insolvent, nevertheless it originated during his lifetime. It was rooted into and was a part of his contract of subscription to the stock. When the bank became insolvent and closed, the liability became fixed and ascertainable and was just as much a debt of his estate as any other debt he owed, originat-

ing during his lifetime.'' We are of the opinion that these decisions of our court only tend to establish that the liability created by our statute against the stockholders in favor of the depositors is one which originates in the statute, but is contractual in its nature; they do not establish that the contract is an implied one not provable by writing.

Appellants also rely upon the cases of Buntyn v. Building & Loan Association, 86 Miss. 454, 38 So. 345; Pate Lumber Co. v. Southern Ry. Co., 115 Miss. 402, 76 So. 481, as absolute declarations by the court that the double liability imposed by the statute arises from an implied contract. We do not think this view is sound, or that these cases are in conflict with others by this court to which we shall presently refer. The Buntyn Case was a suit in equity to recover usurious interest alleged to have been paid by Buntyn to the building and loan association; the three-year statute of limitation was pleaded, and the court said that the liability ''arises not from any express contract, either written or verbal, but from the fact that the appellee coerced the payment of money which it had no right to exact, in which case, because of its obligation to repay such money, the law implies a contract on its part to do so. The distinction sought to be drawn between contracts implied in fact and contracts implied in law cannot be maintained under our statute (section 2739). All implied contracts in this state are subject to the bar of three years, as provided in this section 2739 of the Code of 1892. But whether this be true or not, this contract is certainly one implied in law, and so clearly within the bar of this statute.'' In that case it is clear that the action could not have been based upon a statute. The recovery had to be upon the evidence offered by Buntyn as to the sum of money paid by him as usury. Because of the statute there was an obligation on the part of the building and loan association to repay this usury, and that con-

tract was implied and the statute did not prove its existence.

In the case of Pate Lumber Company v. Railway Company, supra, it was clear from the statement of facts that the contract arose from an obligation on the part of the lumber company to repay to the railway company an overpayment made by the railway company because of certain refunds. The whole contract was implied, and the court demonstrated that it was not provable by writing.

Section 3815, Code 1930, imposes a direct liability on each and every stockholder in a bank to pay again, when and if the bank becomes insolvent and it is necessary to pay depositors, an amount equal to the par value of the stock. When the stockholder receives a share of stock it is as if he receives it with that statute incorporated therein. The statute is in writing; the stock is in writing, and the stockholder cannot take the stock of a bank in this state without the liability imposed upon it by the written statute. It is further shown in this case that the bank kept a stock book with the names and numbers of shares of stock held by each stockholder. This stock book was presumably kept in pursuance of the requirement of section 3803, Code 1930, and is prima facie evidence of the facts therein stated. The book was certainly in writing. If it be said that it is necessary to show when the liability accrued in this case, an order was entered by the chancery court putting this insolvent bank in liquidation on January 17, 1931. Orders of the court are required to be in writing, so that, each and every material requisite of the contract assumed by the stockholder when he bought the stock and had it delivered to him is in writing, and provable by writings.

In Washington v. Soria, 73 Miss. 665, 19 So. 485, 55 Am. St. Rep. 555, this court held that when a vendee of land has taken possession under a conveyance reciting a consideration of a certain amount paid in cash and a balance to be paid in installments at specified dates,

to secure which a lien is reserved in the deed, the statute of frauds does not prevent a recovery of the unpaid purchase money, although the vendee may have signed no written promise to pay; and the vendor, under the liberal provisions of section 671, Code 1892, for the simplification of pleadings, can maintain therefor his action on the case; and that whether the vendor in such a transaction elects to proceed on the promise contained in the deed or that implied by law from the vendee's acceptance of the deed, his right of action rests upon a contract provable, not by parol but by a writing, and the statute of limitations applicable to the case is not that of three years, provided by section 2739, Code 1892, in respect to unwritten contracts, but that of six years, provided by section 2737, Code 1892, in respect to all actions for which no other time is fixed. The above case was followed in Blodgett v. Pearl River County, 134 Miss. 816, 98 So. 227, 228, wherein the court held that the six-year statute of limitation applied and not the three-year statute where the action was based upon a claim, which had been audited, for excess payment of taxes. The court said: "In order for a cause of action to come within the six-year statute of limitation it is not required that it shall be evidenced by writing and signed by the party sought to be charged. It is only necessary that the cause of action shall be provable by writing, and an obligation to pay the same shall arise either expressly or by law. Here we have the entire claim, from beginning to end, provable by writing, namely, appellant's tax receipt and said reclamation proceedings, and then, in addition to that, the mandate of the statute that, when the claim is so audited, allowed, and presented, the board of supervisors are authorized to order it paid, and the treasurer of the county to pay it. Under the authority of the cases following, we hold that the contract of the county to repay said taxes to appellant was provable entirely by writing, applying thereto the requirements of the statute. Washington v.

Soria, 73 Miss. 665, 19 So. 485, 55 Am. St. Rep. 555; Cock v. Abernathy, 77 Miss. 872, 28 So. 18; Fowlkes v. Lea, 84 Miss. 509, 36 So. 1036, 68 L. R. A. 925, 2 Ann. Cas. 466; Masonic Benefit Ass'n v. Bank, 99 Miss. 610, 55 So. 408; Illinois Cent. Railroad Co. v. Oil Co., 111 Miss. 320, 71 So. 568.''

The most that can be said in the case at bar is that the promise to pay the double liability was implied. The contract was provable by writings.

The case of De Soto County v. Wood, 150 Miss. 432, 116 So. 738, seems to put the question here at issue beyond logical debate. There Wood, the circuit clerk of the county, filed a suit more than three years and less than six years after the cause of action accrued. The only evidence was the statute fixing the fees and salaries allowed to officers. The court there held that ''the claim or action therefor is not upon an implied contract provable by parol, but is one provable by a writing. The promise to pay is implied by law after the services have been rendered by a public officer, but it is a promise the terms of which are provable by a writing embodied in the statute fixing the compensation which will be paid upon the performance of the services by officer.'' Also, see, Madison County v. Collier, 87 Miss. 204, 30 So. 610.

In these two lines of cases this court has studiously tried to announce the distinction between a contract implied by law and a contract provable by a writing in which the promise to pay or perform is implied. Under all the authorities in Mississippi the double liability of a stockholder in a state bank is provable by writings, therefore, it is not an implied contract but is a written contract with an implied promise to pay or perform.

If we were to say that the liability is statutory that would not avail the appellants here, for the reason that not being a penalty, the liability therein imposed would not fall within the three-year statute but would be covered by the general language of the six-year statute quoted supra.

We have not overlooked the decision of the Supreme Court of the United States cited by both sides, but feeling content to rest the solution of the case at bar on our own construction of our statute, we forego a discussion thereof.

2. We think the chancellor correctly overruled the plea of certain stockholders that all the stockholders were not joined in one action. The plea did not conform to section 515, Code 1930; it did not name any necessary stockholders omitted therefrom. The argument that certain stockholders had been named in the bill as having paid or otherwise discharged their liability does not conform to the statute as to the nonjoinder of parties. Certainly, the receiver would not be required to do the foolish thing of suing people who had already recognized and paid their obligation. Certainly, the receiver is not called upon to sue an insolvent person. This is patently true, regardless of whether or not we shall finally announce the rule to be that all the stockholders liable shall be joined in one suit, as contended by appellants, citing the case of Abbey v. Delta Bank & Trust Co., 139 Miss. 36, 103 So. 801.

3. By demurrer certain appellants alleged that section 119, chapter 146, Laws 1934, repealed the double liability theretofore existing. That section is as follows: "That chapter 85 of the Mississippi Code of 1930 and all of the powers and duties therein imposed upon the superintendent of banks and the state banking department as therein constituted, be and the same are hereby repealed except to the extent herein provided; that chapter 22 of the laws of 1930; chapter 251 of the laws of 1932; chapter 282 of the laws of 1932; chapter 314 of the laws of 1932 be and the same are hereby repealed. Chapter 336 of the laws of 1932 is hereby repealed on and after 90 days from the effective date of this act." The double liability section (section 3815, Code 1930) is a part of chapter 85; however, by section 115 of chapter 146, Laws of 1934, the Legislature re-enacted verba-

tim the liability of stockholders as it appeared in section 3815, Code of 1930, and added thereto certain exceptions in the following language "Such double liability shall not apply, however, to stock in any bank which may be organized, after this act shall take effect, nor to stock in any bank open for business at the time this act shall take effect, provided such bank is a member of the federal deposit insurance corporation, or any other similar agency created by the laws of the United States." It is clear from the language of the act itself that the Legislature intended to include within the terms of double liability all those classes of stockholders which were not excluded therefrom by its terms. Therefore, the statute as to double liability was continued in force, and it was not the intention of the Legislature to repeal it. Section 115 of chapter 146, Laws of 1934, is sufficient proof that it did not so intend.

In Anding v. Levy, 57 Miss. 51, 34 Am. Rep. 435, Chief Justice George said: "When a statute expressly repeals another, yet contains in it a provision of the former statute identical in language,—as is the case now before us, —or even identical in substance, it cannot be said that as to that provision there has been any repeal." Further in the opinion the language of the court there aptly fits the case at bar where it is said that: "There has never been a single instance since its first enactment when it was not in full force and operation as the law of the State. . . . There can be no revivor unless there has been a previous death; and there has not been for a single instant a cessation or suspension of the life and vigor of this provision since its first enactment, for the repealing statute went into operation the very instant of the repeal of the other; and until such operation there could be no repeal of the former, for that repeal is only effected by the vigor and operation of the latter. . . . The effect of such action is properly an uninterrupted continuation of the provision,—a translation of it in all its vigor and force,—not a destruction

of it, and then a resurrection.'' That case was approved in State Tax Commission v. Mississippi Power Company, 172 Miss. 659, 160 So. 907, wherein the authorities in this state to the same effect are cited.

We find no error in the action of the court below.

Affirmed and remanded.

**Smith, C. J.**, delivered an opinion specially concurring.

I am in no disagreement with my brethren that if the fiction of an implied promise is to be here applied, the six-year statute of limitation (Code 1930, section 2292), not the three-year (section 2299), controls. The fiction of an implied promise, resulting not in a true contract, but in a quasi or constructive contract, is convenient and necessary some time for procedural and jurisdictional purposes. But when applied to statutory obligations, the liability, in the last analysis, rests not on a contract, but on the obligation imposed by the statute itself; and the limitation on the time within which an action on this obligation can be brought is that prescribed by section 2292, Code 1930, i. e., six years. 37 C. J. 749, and authorities cited in note 38 thereto.