CARLISLE et al. v. LOVE, SUPERINTENDENT OF BANKS.

(Division A. June 5, 1934. Suggestion of Error Overruled July 16, 1934.)

[155 So. 197. No. 30679.]

622

Paine & Paine, of Aberdeen, for appellant, Julian T. Evans.

Leftwich & Tubb, of Aberdeen, for appellants.

624

D. W. Houston, Sr. and Jr., of Aberdeen, Flowers, Brown & Hester, of Jackson, and W. G. Roberds, of West Point, for appellee.

Argued orally by **T. F. Paine**, for appellant.

**Cook, J.**, delivered the opinion of the court.

Appellee, as state superintendent of banks, filed a bill in the chancery court of Monroe county to enforce the statutory stockholders' liability against a number of per-

sons in whose name stock in the Commercial Bank & Trust Company of Aberdeen, Mississippi, in liquidation, stood at the date the said bank closed for business on the 16th day of December, 1930. By agreement, separate records were kept of the proceedings as against each class of defendants in the court below, and from a decree adjudging liability against three classes of the defendants, separate appeals were prosecuted, the separate records of the proceedings against the several appellants being combined in one record in this court. For the purpose of disposing of the questions presented by the separate appeals, the facts of each appeal and the legal conclusions based thereon will be separately stated.

As to the appellant J. T. Evans, Sr., the bill alleged that he was liable for the par value of twenty-four shares of stock, totaling two thousand four hundred dollars, which stock, in the amount of eight shares each, stood in the name of J. T. Evans, trustee, for each of his minor children, when the said bank was closed for liquidation; that this stock was transferred to the said minors by the said J. T. Evans, Sr., on January 29, 1930; that the said Evans was liable for the par value of this stock, because, on account of their infancy, the said minors were without legal capacity to contract for the purchase of said stock, and he could not transfer such stock to them so as to divest himself of the ownership thereof, and avoid liability thereon, as it was unlawful for such stock to be placed in their names, and was unlawful for them to attempt to own it. The bill further charged that the double liability as fixed by statute on the owner of stock in a failed bank is coupled with and follows the ownership of such stock, and is a liability attached to the stock which must be assumed upon the purchase thereof, and must of necessity follow the ownership of the stock; that since the double liability as created by statute is not such as can be enforced against a minor, and is not such liability as can be contracted for and assigned by a minor, the attempted transfer of such stock by the said Evans

to his minor children was ineffectual to relieve him from the double liability thereon.

The bill further charged that the said minors did not purchase or attempt to purchase the twenty-four shares of stock in question, but said stock was simply placed in their names by the said J. T. Evans, Sr.; that no consideration was paid by said minors for such stock; that it was in fact actually owned by the said J. T. Evans, Sr., at the time the bank closed, and simply stood in the names of the minors as the nominees of the said Evans; that the said Evans had never ceased to be the owner of the stock, and had never ceased to be liable thereon under the double liability imposed for the benefit of depositors, for the reason that the said transfer to the minors was ineffectual to relieve him, and for the further reason that such transfer was without consideration and unlawful, and was made with the intent and purpose on the part of the said Evans to escape his statutory liability as a stockholder in said bank.

The appellant answered the bill, under oath, denying fraud, and also demurred. After the demurrer was overruled, he filed a further answer averring the fact to be that prior to the transfer to his minor children, the stock, which then stood in his name, in reality belonged to his wife, the mother of the children; that his wife decided to give the stock to her minor children, and to accomplish this purpose and to create an irrevocable trust for the benefit of such children, with the knowledge and consent of the officers of the bank, he transferred the stock to himself as trustee for his children; that at the time of the creation of this trust, he was solvent, and the bank was solvent, so far as he was informed; that after the creation of the trust, the bank continued to be solvent and was examined by the state bank examiner and found to be solvent; that after the creation of the trust, the bank recognized his right to create it and issued to him as trustee for each of said minors, eight shares of stock; that after the bank was in liquidation the bank further

recognized the creation thereof by applying funds on deposit therein to the credit of the minors on the stock liability of the shares standing in his name as trustee; and that the trust was created in good faith at a time when both the bank and the appellant were solvent.

The evidence showed that the stock in question stood in the name of appellant Evans on the books of the bank from March, 1920, to the date of the transfer to the children on January 29, 1930, and the other facts set forth in the pleadings in reference to the relation of the respective parties to this stock were established by uncontradicted evidence; and upon this evidence the chancellor held that appellant Evans was liable for the assessment against the stock transferred by him to his minor children.

The statute fixing the liability of stockholders in state banks is section 3815, Code 1930, which reads as follows:

"The stockholders of every bank shall be individually liable, actually and ratably, and not for one another, for the benefit of the depositors in said bank to the amount of their stock at the par value thereof, in addition to said stock; but persons holding stock as executors, administrators, guardians, or trustees shall not be personally liable as stockholders, but the assets and funds in their hands constituting the trust shall be liable to the same extent as the testator, intestate, ward or person interested in such trust fund would be, if living or competent to act; and persons holding stock as collateral security shall not be personally liable as stockholders, but the person pledging such stock shall be deemed the stockholder and liable under this section. Such liability may be enforced in a suit at law or in equity by any such bank in process of liquidation, or by the superintendent of banks, or other officer succeeding to the legal rights of said bank."

The statute which fixes the time when the statutory liability of stockholders of banks who transfer said stock shall cease, is section 3803, Code 1930, which reads, in

part, as follows: "The liability of any stockholder in a bank upon transferring his stock in such bank to another shall not cease until the next regular or special examination of said bank following the date of transfer of said stock and not then unless such examination shows the bank to be solvent; but the purchaser's liability shall begin after the next ensuing examination showing the bank to be solvent."

The question presented for decision by this appeal is, Could the appellant voluntarily transfer to his minor children, or to himself as trustee, for such minors, stock in this bank and thereby relieve himself, under the circumstances above stated, of the statutory liability on the stock?

The trust created by the appellant in favor of his children is a mere passive one in which the trustee is the holder of the naked legal title, while the beneficial ownership of the stock is vested in the minors, and the effect of the transfer of the stock to this trustee on the statutory liability resting on the transferrer is the same as would result in the case of a transfer directly to the minors.

The great weight of authority supports the view that in order to be relieved of stockholders' liability by a transfer of the stock, the transfer must be to a person or corporation not only legally capable of holding the stock and assuming the liabilities of the transferor in relation thereto, but also legally bound to respond when assessments are made thereon, or, in other words, to one who is legally capable of assuming such obligations and is not at liberty to repudiate them. It is true that most of the cases passing upon this point are cases from the federal courts construing the provisions of the National Bank Act on the subject of stockholders' liability; but, in so far as they bear upon this question, the provisions of that act are, in legal effect, substantially the same as our state statute. Under the National Bank Act full liability of a transferee attaches immediately upon the transfer,

unless the transfer is made within sixty days next before the date of the failure of the bank association to meet its obligations, or after the transferrer have knowledge of such impending failure, in which event the transferrer remains liable to the extent that the transferee fails to meet such liability. Under our state statute, the transferrer remains liable until there has been a subsequent examination of the bank showing it to be solvent. After such examination, full liability attaches to the transferee. So, conceding for the purpose of this decision, that the examination of the Commercial Bank & Trust Company which was made after the transfer of the stock here in question, showed the bank to be solvent, the effect of the transfer of the stockholders' liability is the same as that considered in the federal cases hereinafter cited, and, therefore, those cases are applicable.

This rule is announced in Thompson on Corporations, volume 6 (3 Ed.), section 4459, in the following language: "It is the rule, too, that a transfer to an incompetent person, that is a person who by reason of infancy or coverture, is not competent to discharge the duties and to assume the liabilities of a stockholder, will not relieve the transferrer from liability. On this theory it has been held that a transfer to an infant for the purpose of escaping liability will not relieve the transferrer. A transfer to an infant will not relieve the transferrer from liability, unless the infant has reached his majority and ratified the transfer."

In Foster v. Chase (C. C.), 75 F. 797, the defendant Foster bought stock in a national bank in the names of his minor children, and, in defense of a suit by the receiver of this bank against him upon an assessment on this stock, it was contended that his children were shareholders and liable, if any one was. In responding to this contention, the court said: "Assent is necessary to becoming a shareholder, subject to this liability, in a national bank. Keyser v. Hitz, 133 U. S. 138, 10 S. Ct. 290 [33 L. Ed. 531]. Minors do not seem to have anywhere

the necessary legal capacity for that. The principles upon which this disability rest are elementary and universal. 1 Bl. Comm. 492; 2 Kent, Comm. 233. In buying and paying for this stock, and having it placed on the books of the bank, the defendant acted for himself; in having it placed there in the names of his children, as with their assent, he assumed to act for them. As they could not themselves so assent as to be bound to the liabilities of a shareholder, they could not so authorize him to assent for them as to bind them. To the extent that they could not be bound he acted without legal authority, and bound only himself.''

In Aldrich v. Bingham (D. C.), 131 F. 363, 364, the defendant transferred to his minor children fourteen shares of stock in a national bank which later became insolvent, and suit was brought against him for an assessment on the stock so transferred. As applicable to the case at bar, the court in that case stated the question for determination as follows: ''First, Is the defendant liable upon the stock originally assessed to him and subsequently transferred by him to his infant children without fraud or collusion, the bank, through its executive officers, having admittedly had knowledge of the fact that the transferees were infants under the age of five years, and made dividend checks payable to the individual order of the infant stockholders?'' In answer to that question the court said: ''It is a well-established rule of law that a transfer of stock in a corporation must be made to a person or corporation not only legally capable of holding the stock transferred, but also to one who is legally bound to respond when assessments are made upon the stock, and who may lawfully assume the liabilities of the transferrer in relation thereto. It need not necessarily have been transferred to a person who is responsible in the sense that he will be able to financially meet the liabilities imposed upon a stockholder, but it is essential that he shall be legally liable to assume such obligations, and not be at liberty to repudiate them.''

In the case of Early v. Richardson, 280 U. S. 496, 50 S. Ct. 176, 74 L. Ed. 575, 69 A. L. R. 658, the supreme court of the United States had under consideration an assessment on stock in an insolvent national bank which had been originally purchased by Richardson, the certificate of shares being indorsed in blank by the seller. He (Richardson) delivered these certificates to the bank with verbal instructions that they be registered and new certificates issued in the names of his minor children. In passing upon these facts, the court stated the question and its conclusions in the following language:

" 'Is one, who purchases shares of stock of a national bank, liable for an assessment subsequently imposed by the comptroller of the currency upon the stock for the benefit of the creditors of the bank after the insolvency thereof, when it appears that the purchaser bought the stock from the registered holder thereof and received a certificate therefor endorsed in blank by the holder, with intent at the time of such purchase and delivery of giving the stock to his minor child, but without knowledge at that time of the failing condition of the bank, or intent to avoid the stockholder's liability, and when, after the acceptance of the endorsed certificate from the seller, and before the insolvency, the purchaser with like knowledge and intent, promptly presents the certificate to the bank, causes the shares to be registered and a new certificate to be issued in the child's name?' . . .

"The real question is whether the intent of Richardson to buy the stock for his minor children, and the fact that by his direction the transfer was made to them upon the books of the bank and certificates issued in their names, had the effect of relieving Richardson from liability. We think not, since the transferees, being minors, were without legal capacity to assume the obligation. Upon coming of age they would have an election either to affirm or avoid the entire transaction. In the meantime, the transfer of the stock having resulted to their disadvantage, the law will avoid it for them, thus leav-

ing the liability of Richardson for assessments unaffected.''

In these cases the defensive elements of good faith on the part of the transferrer—or absence of fraud, collusion, or intent to avoid liability—and knowledge on the part of the officials of the bank were involved and held to be immaterial. In the case at bar, we think the transfer of the stock for the benefit of the minors, who were incapable of taking the stock and assuming the consequent liability during their minority, did not relieve the appellant of such liability, and, therefore, as to him the decree of the court below will be affirmed.

As to W. H. Carlisle, guardian of Willie Carlisle Hinds, a minor, and his said ward, the bill of complaint charged that he, as such guardian, owned two and one-half shares of the stock of said bank of the par value of two hundred fifty dollars. The guardian and his ward filed separate answers.

The answer of the said Willie Carlisle Hinds denied that she was, or ever had been, a stockholder in said bank, and denied that she was liable on account of any alleged former ownership of such stock by her. She further averred that if any of the stock in the bank stood in her name or in the name of her guardian on the stock register, or other books of the bank, it was wholly unauthorized by her or by any valid legal proceeding, and that the contract, if any was made, by which such pretended stock was obtained, was not legally made, and is not binding on her; that section 1885, Code 1930, provided the manner in which a guardian may invest the surplus money of his ward; that under this statute and other laws of the state, a guardian has no power to invest the funds of his ward in stocks of industrial or business enterprises or corporations, all of which are more or less hazardous; and that under the said statute the surplus funds of a ward should be invested in United States, state, county, municipal, or levee bonds.

She further averred that neither her guardian nor any

other person for her had any lawful right or power to invest her funds in the stock of said bank; that by reason of her minority at the time of said transaction, she has the right under the law to repudiate any such pretended transaction or contract by which liability was attempted to be fastened on her; that she was then twenty years of age, and had arrived at the age of discretion; that she thereby repudiated any such alleged contract or purchase, if made for her; and that she elected not to be bound by it.

The proof shows that on July 1, 1916, W. H. Carlisle, guardian of the estate of the said Willie Carlisle Hinds, filed a petition in the chancery court of Monroe county, seeking permission to invest five hundred twenty-five dollars of the funds of the said estate in the purchase of five shares of stock in the then Aberdeen National Bank; that on the 14th day of July, 1916, the chancellor, in vacation, entered an order authorizing him to make the investment, which was shortly thereafter made. At the next term of the chancery court, the said guardian filed his annual account in which he included this stock as a part of the assets of the said estate, and this annual account was approved. It was further shown that on March 14, 1920, the said Aberdeen National Bank was converted into a state bank known as the Commercial Bank & Trust Company of Aberdeen, and the stock thereof was reduced from one hundred thousand dollars to fifty thousand dollars, and new stock was issued to the old stockholders for fifty per cent of the original stock, thus reducing the number of shares of stock standing in the name of appellant to two and one-half shares. Afterwards, the chancery court approved the fourth annual account of the said guardian, and allowed him credit for the two hundred fifty dollar loss occasioned by the reduction in stock of said bank.

The court below held that the chancellor had the power to authorize the guardian to invest the funds of his ward in this bank, and that the purchase of the stock was,

therefore, binding upon the ward so as to charge her estate with the statutory stockholder's liability, and from the decree entered against the said W. H. Carlisle, as guardian, he has appealed.

After the perilous financial conditions which have existed, and to a lesser degree still exist, through this state and nation, the gross impropriety of permitting the investment of a minor's funds in the stock of private corporations or banks which is charged with double stockholders' liability should be manifest to every one; but the question here is not one of propriety or wisdom, but one of power. It appears to be practically the universal rule that, in the absence of a statute so authorizing, a guardian has no power to invest the funds of his wards in such stocks. In Thompson on Corporations, volume 5 (3 Ed.), section 4044, this rule is announced in the following language: "Unless authorized by statute, the guardian has no power to invest the funds of his ward in the stocks of an ordinary corporation, and if he does so the investment is at his peril. If such guardian invests his ward's money in unprofitable stocks he must himself bear the loss, if any; the ward is not obliged to take such stock from the guardian. . . . The rule against the investment of the ward's funds in ordinary corporate stock will prevent a guardian from investing trust funds in shares of stock belonging to the estate of the ward's ancestor. And if such guardian, without such authority, purchases the stock for the ward, a court of equity, a succeeding guardian or the beneficiaries, on obtaining majority, may ratify in case the property increases in value or remains of the same value, or they may disaffirm the purchase in case the same depreciates or becomes worthless."

In 28 C. J. 1141, with respect to the character of investments that may be made by guardians, it is said: "With respect to the character of investments the rules applicable to trustees generally apply to guardians. Where the character of investments is prescribed by stat-

ute, the guardian may lawfully invest in such securities only as the statutes prescribe, and if he receives as guardian securities of other kinds, he must, at his peril, within a reasonable time, dispose of them and reinvest the proceeds in the securities prescribed. The guardian should not invest the ward's property in trade or speculation.''

Section 1885, Code 1930 prescribes how a guardian may invest the money of his ward, which is not needed for current expenses, and it only remains to be determined whether this statute confers on the chancery court, or the chancellor in vacation, the power to authorize a guardian to invest his ward's funds in the stock of private corporations. This statute reads as follows:

''Whenever the guardian shall have the money of his ward not needed for current expenditures, or directed to be invested for the ward, he shall apply to the court, or chancellor in vacation, for direction as to the disposition he shall make of it; and the court or chancellor shall determine whether he shall lend it at interest, and upon what security, or how he shall dispose of it; and if the court or chancellor designate the person to whom the loan shall be made, or the security on which it shall be made, and the loan to be so made, responsibility shall not attach thereafter to the guardian; but if the court or chancellor shall entrust him with discretion in the matter he shall be bound for the exercise of sound judgment; and the court or chancellor may direct an investment in the bonds of the state or of any county, or municipality thereof, or of a levee board, or of the United States. Any guardian who fails to report to the court the fact that he has money of his ward not needed or allowed to be used for current expenditures, and to ask the order of the court as to the disposition of such money, shall be chargeable with interest on the same at the rate of eight per centum per annum during the time of failure.''

While the power is conferred on the chancery court,

or chancellor in vacation, by this statute and others, to direct and control the disposition of surplus funds of minors, the power in that regard is in each instance prescribed and limited by the statute. By section 1882, Code 1930, the court is empowered to authorize a guardian to purchase real estate with such funds, if it be of the opinion that it will promote the interest of the ward. Under the provisions of the said section 1885, a guardian can invest or dispose of the surplus money of his ward only under the direction of the chancery court, or chancellor in vacation, and there are only two classes of investment prescribed therein which the court or chancellor may authorize the guardian to make with his ward's funds. Whenever a guardian shall have surplus money of his ward, which is not already directed to be invested, this statute requires such guardian to apply to the court or chancellor for direction as to the disposition of it, and, upon proper application, the court or chancellor may authorize him to lend it at interest upon proper security, or may authorize and direct that such funds be invested in bonds of the state, or of any county or municipality thereof, or of a levee board, or of the United States. When a guardian lends such funds in compliance with an order of a court or chancellor which designates the person to whom the loan shall be made, or the security upon which it shall be made, he is thereby relieved of responsibility; but if such a loan is made in the exercise of discretion intrusted to him by the court or chancellor, he is bound for the exercise of sound judgment.

There is no other statute which authorizes the investment of a minor's funds in speculative corporate stocks; and by prescribing in said section 1885 the classes of securities that the chancery court or the chancellor may direct the funds to be invested in, the legislature has in effect excluded others. Consequently, the chancellor was without power to authorize the guardian of the said Willie Carlisle Hinds to invest her funds in the corporate stock of this bank, and the order authorizing her guard-

ian so to do is invalid and is not binding upon her. Having reached the age of discretion, she has elected, as she had the right to do, to disaffirm the purchase. Therefore, she is not liable for the stock assessment, and the decree of the court below will be reversed and the bill dismissed as to her and her guardian.

The facts applicable to the appeals of W. B. Watkins, guardian, G. H. Watkins, guardian, and Mrs. Grace Watkins Harris, guardian, are the same, and are substantially as follows: The minor wards whose estates are involved in this appeal are all nephews or nieces of W. L. Watkins, who died testate in Monroe county, Mississippi, in November, 1924, leaving a large estate which was fully administered by the executor of his will. At his death W. L. Watkins owned forty shares of the capital stock of the Commercial Bank & Trust Company of Aberdeen, and in the division of his residuary estate under the terms of his will, the executor set apart one share of this stock to each of the minor wards of W. B. Watkins, guardian; one share to the minor ward of Mrs. Grace Watkins Harris, guardian; and one and one-half shares each to the minor wards of G. H. Watkins, guardian; and the bank issued certificates of stock to each of the respective guardians for the amount of stock set apart to each ward. There is in the record an agreement of counsel reciting, among other things, that each of these guardians also received under the will of the said W. L. Watkins, deceased, other assets in excess of the amount of their liability on the stock sued for, and that the said guardians then had in their hands, as such guardians, other assets of value in excess of the liability sought to be imposed because of the statutory liability as stockholders in said bank, and that this applied to each of the respective wards. It was further agreed that none of the said minors had reached the age of twenty-one years at the time of the trial, and that the several guardians of these minors received dividends on the stock for them during the

years 1927 and 1928, these being the only dividends paid on the stock during the time of their ownership.

The several guardians filed answers to the bill of complaint on behalf of each of said minors denying all liability for assessment against the stock issued to them for certain minors, and set up, among other things, as a defense, that the guardian was without authority to contract for or assume the double liability of stockholders in said bank; that the said minors could not assume such liability or assent to the legacy as represented by the transfer of the stock to them; and that the assets of said minors could not be held for the double liability of stockholders arising from the transfer of such stock on the books of the bank to said guardians for their respective wards, which said shares of stock were a part of the legacy from the estate of W. L. Watkins, deceased. The answers further averred that the court should, on behalf of said minor defendants, disaffirm the issuance of said stock, and on behalf of each of the minors, the guardians, in their answers, disaffirmed the act of the bank in issuing the stock to said wards in their respective names, or to the guardians for them.

There is involved in this appeal only the question of whether or not, where a minor receives by bequest bank stock which is burdened with the statutory stockholders' liability, the assets of the minors' estate which were received from the same source, are chargeable with such statutory liability.

The minors whose interests are involved in this appeal received this stock by bequest under the will of W. L. Watkins, deceased. As a bequest under the same will, they received, and still have, other assets in excess of the statutory liability on this bank stock. When the testator acquired this stock, the stock liability was an essential element and part of the contract by which he became a stockholder of the bank. Although this liability did not mature until the bank became insolvent, long after the testator's death, and probably after his estate

had been fully administered and closed, it was grounded in and was a part of this contract of purchase of the stock, and survived against his estate; and when the bank became insolvent and closed, this liability matured and was a debt chargeable against the assets of his estate, which followed the stock into the hands of the legatees. Gift v. Love, 164 Miss. 442, 144 So. 562, 86 A. L. R. 63.

Conceding the rights of the minor legatees or the court or their guardians on their behalf, to disaffirm the entire legacy, if so to do were for the best interest of the minors, it does not follow that the burdens incident to the bequest may be disaffirmed, while other assets of the testator which are charged with the burden are retained. The property acquired by these minors under the will of W. L. Watkins constituted one entire legacy, and while section 3815, Code 1930, relieves executors, administrators, guardians, or trustees holding stock in banks from personal liability on such stock, it makes the assets and funds in their hands constituting the trust—in this case the legacy—liable "to the same extent as the testator, intestate, ward or person interested in such trust fund would be, if living or competent to act." The testator's liability on this stock, if he were living, cannot be doubted, and we do not think the minor legatees who received the stock under his will can escape or repudiate this liability while retaining in their hands other assets received from the same source of value in excess of this liability. Consequently, so far as the decree below adjudged liability against the guardians of the several minor legatees under the will of the said W. L. Watkins, deceased, it will be affirmed.

Affirmed in part and reversed in part.