## *In re* GUARDIANSHIP OF HORNE.

(Division B.   April 12, 1937.   Suggestion of Error Overruled May 10,
1937.)

[173 So. 660.   No. 32694.]

Flowers, Brown & Hester, F. W. Bradshaw and Robert Burns, Jr., all of Jackson, and J. M. Carr, of Newton, for appellant.

A. B. Amis, Jr., of Newton, for appellee.

Argued orally by **F. W. Bradshaw**, for appellant, and by **A. B. Amis, Jr.**, for appellee.

**Griffith, J.**, delivered the opinion of the court.

On January 24, 1919, S. McCary was appointed guard-

ian for his granddaughter, Orvella Horne. The guardian filed seventeen annual accounts, all of which were approved, and on May 6, 1936, he filed his final account, the ward being then married and having become twenty years of age. Soon thereafter the ward filed numerous exceptions to said final account, most of which exceptions were correctly overruled and disallowed by the chancellor. Other exceptions were sustained, which increased the admitted balance due to the ward by several thousand dollars, and the guardian has appealed.

We are of the opinion that only three of the exceptions were well taken and are sustained by this record. The first is in respect to the life insurance premiums. It appears that on March 2, 1928, the chancellor made an order on a petition presented by the guardian for that purpose, allowing the guardian to take a policy of life insurance on the life of his ward in the face amount of $5000 and to pay the annual premiums out of money of the ward on hand. The premiums were so paid each year, were carried in all subsequent annual accounts, which were all approved as aforesaid. In her exceptions the ward challenged this expenditure, and upon her coming of age before the final hearing, she expressly repudiated the insurance transaction and tendered the policy to the guardian.

The authority for this expenditure must be found, if at all, in section 1885, Code 1930, chapter 201, Laws 1914. In Carlisle v. Love, 170 Miss. 621, 636, 155 So. 197, it was held that the investments which the guardian may make under that section are only such as are therein specified, and since investments in life insurance policies are not so specified, we are compelled to hold that the chancellor had no authority to make the order mentioned nor to approve the expenditures thereunder. The guardian is, therefore, liable for each premium paid, together with 6 per cent. simple interest to be calculated from the date of each of the said premium payments; provided, however, and when, the ward shall deliver

the policy of insurance to the guardian with whatever indorsements or assignments may be reasonably required by the insurance company, so as that whatever surrender or other value the policy may have, if any, shall inure to the benefit of the guardian.

The exception in respect to the damages to certain real estate owned by the ward is also well taken, and is sufficiently sustained by the evidence. This item amounts to $160; but as it, is one for unliquidated damages, no interest is to be allowed upon it, except from the date of the final decree appealed from, to-wit, September 28, 1936. The other, or third exception, to be allowed is the item of $39.91, which the guardian failed to bring forward from his second annual account, through an oversight of the attorney who prepared the subsequent account. This item is to carry no interest charge.

All the other exceptions, so far as allowed by the chancellor, should have been overruled and disallowed. One of these items deals with interest on all the stated balances of cash on hand as shown by each annual account. Within due time after the guardian came into the possession of money of the ward not needed for current expenses, he reported the fact to the chancellor and petitioned for authority to make loans thereof. Part of the money was ordered to be put in bank on savings account at 4 per cent. interest and the remainder was directed to be loaned on security at 6 per cent. annual interest. The money which was directed to be deposited in bank on interest was so deposited, and was kept deposited until the guardian became uneasy over the banking situation and withdrew these deposits, there being more than $10,000 in all of such deposited funds, it being worthy of remark here that both the banks in which these funds were deposited subsequently failed. He testified, without dispute, that he kept the funds loaned on security so far as he could find safe loans with reasonable effort; and in view of the disastrous times and

doubtful conditions during which he was burdened with this estate, we are prepared to commend his caution.

But his annual accounts were not accompanied with detailed reports showing each loan, to whom made, and the security therefor, and how much not loaned remained in cash. He simply charged himself with the total belonging to the ward as if cash in his hands, and charged himself with the interest collected and from whom. The accounts were so stated, however, that the chancellor could not in any of them have been mistaken, upon a careful inspection of them, that the cash reported as on hand was, in fact, nearly all loaned out at interest. The chancellor throughout all these years never at any time required the accounts to be more fully stated, the testimony of the guardian being undisputed that he furnished his attorney with the facts and the attorney made up the accounts therefrom, and they were approved.

When section 1889, Code 1930, which in the same form has been in all our Codes for years, is examined, it will be observed that what is specifically required of annual accounts is that receipts and expenditures shall be shown. There is nothing in the section which expressly requires a full and complete showing as to the entire status of the estate, whereas the general interpretation given to such statutes in well administered courts of probate, or those exercising similar powers in this country, is that the annual account of a guardian should be accompanied with a report showing the status and condition of the estate, its assets and the several kinds thereof, so far as there has been any change from the inventory, and how the lands have been managed, and, if rented, to whom and for how much, and if any lands are idle, the reasons therefor. And in the same quality of detail as to loans and investments, so that the ward or any person interested in him or her may, from time to time, obtain full information from the accounts and reports.

But for years in the past, and until recently, and even yet in perhaps the majority of instances, the average member of the bar has prepared his annual accounts sim-

ply by stating the receipts and expenditures, as was done in this case. And when the chancellor requires nothing further but accepts and approves such accounts, we are of the opinion that the guardian, who is a layman and must rely upon his attorney and the chancellor as to such details, ought not to be penalized in regard to formal matters for such reliance upon his counsel and the chancellor. Here, when under the present exceptions, the form of these accounts was challenged, the guardian offered to show to whom these loans had been made and how secured; but the chancellor rejected the proof because the accounts showed cash on hand instead of loans. Until section 1889, Code 1930, shall be so amended as to state in express words the proper practice as to accounts and reports, or until the chancellors shall have, by their administration, fully posted the bar as to the requirements, we think it unduly harsh to charge guardians with technical interest, unearned interest, in such a case as this, which is, that the evidence shows that this guardian accounted for every dollar of interest which he collected, that he did not allow money to lie idle in his hands without good excuse therefor, and there is no word of proof that he used the idle money, or any part thereof, for his own benefit, as was the case in Owens v. Owens' Estate, 84 Miss. 673, 37 So. 149.

The other two main exceptions allowed by the chancellor dealt first with the ward's one-fifth interest in the capital stock of the A-I-M Percolating Corporation of Virginia. The undisputed testimony shows that this stock never paid a single dividend after it came into the hands of the guardian, that the only offer the guardian ever had for the stock was a nominal sum by one of the officers of the corporation, and that the corporation went into bankruptcy in 1932, and that although the guardian took steps to realize something in the bankruptcy proceedings, he was unsuccessful. This was sufficient in our opinion to transfer the burden of proof to the exceptor to show that at some time something could have

been obtained out of this stock, and to suggest some course by which this probably could have been done. The ward is in no position to allege that the guardian should have gone to Virginia to inquire into this matter, for she objected to the allowance of the expenses of the guardian, who made two trips to Florida to look after an orange farm there, out of which the guardian finally realized by sale a sum larger than any person connected with these estates had ever considered as likely to be obtained. The exceptor offered not a word of proof as to the value of this corporation stock at any time after it came into the hands of the guardian, or any proof that he could at any time have obtained enough out of it to cover the expense of pursuing it. It was stock acquired not by the guardian, but by the deceased father and mother of the ward long before the guardianship was begun. The record is suggestive of the probability that the corporate stock was simply what is commonly termed wild-cat stock, which is often found among the papers of decedents, especially those who were inclined to take a chance, an inclination which is disclosed by the orange farm investment of this particular decedent.

And for stronger reasons the chancellor should have rejected, in the second place, the exception in regard to the stock, Ferrodine Chemical Company, also a Virginia corporation. This stock never came into the hands of appellant at all. It was at one time held by Hopkins, guardian of the father of the ward, the father having become non compos mentis. Hopkins reported this stock in his inventory of December 9, 1918, together with the said A-I-M Percolating stock. On June 18, 1923, Hopkins reported that these stock certificates had been destroyed by fire and asked authority to go to Virginia to see about a reissuance thereof, or to employ an attorney to protect the interests of the estate in that matter, and an order was made in accordance with the prayer of that petition. It appears that the A-I-M Percolating stock

was reissued and was delivered to appellant by Hopkins, but nothing further anywhere appears as to the Chemical Company stock; no dividends were ever reported by Hopkins on this latter stock, and it was not turned over to appellant when the Hopkins' guardianship was closed.

There is no doubt of the legal obligation of a guardian to use reasonable diligence to get into his possession, and to properly manage, the estate of his ward after it comes into his possession. His failure to do so is negligence; but in order that negligence shall be actionable, it is an essential element that the person complaining has been injured by that negligence; and this injury must not only be averred by the complaining party, but he must produce some proof of it. These are all elemental principles of the law, applicable as well to guardianship as to any other relation in life. There is not a word of proof that this chemical company was in existence at the time of the close of the Hopkins' guardianship, from which it follows that appellant cannot be held liable for failure to obtain from Hopkins the stock in the then nonexistent corporation—nonexistent so far as the proof in this case shows. Had this stock been delivered by Hopkins to appellant, or had there been any proof that the corporation was then or subsequently in existence, it may be that the burden would have been on the guardian to offer such proof as to disclose prima facie that the stock was worthless, or that nothing substantial could be realized out of it; but here the case rests simply on a presumption that a private corporation shown to have had a previous existence in a distant state continued to exist, as a going concern, and this without any proof as to the previous nature, business, or financial stability of the company. The experiences of the last several years admonish us against the allowance of that particular presumption in the absence of the proof last mentioned, except as slightly probative and subject to be overthrown by slight cir-

cumstances. The proof seems sufficient to overthrow the presumption here, in that Hopkins, whose reports and petitions to the court throughout indicate that he was a man of capacity and integrity, never reported a dollar of dividends on this particular stock and was never required to do so, and apparently never succeeded in getting a reissue of the burned certificate, thereby indicating that the concern was no longer in active existence.

The court properly ruled on the question of attorney's fees in regard to the final account and the contest thereof, and properly allowed the guardian the additional compensation mentioned in the decree.

The decree is affirmed in part and is in part reversed, and the cause is remanded with directions to disallow all exceptions except the three first hereinabove mentioned, and that the court render a final decree in accordance with this opinion.

Affirmed in part, and in part reversed, and remanded with directions.